COMMONWEALTH vs. JAMES A. FORD.

Plymouth. January 6, 1986. — April 14, 1986.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Evidence,* Credibility of witness, Prior convictions. *Error,* Harmless. *Practice, Criminal,* Duplicitous convictions.

In the circumstances of a criminal trial, it was prejudicial error for the judge to admit in evidence, to impeach the defendant's credibility, certified copies of records of his prior convictions which contained docket entries extraneous to the convictions themselves, showing defaults, warrants issued, arrests on warrants, and violations of parole, as well as for the judge, in two instances, to admit records of both a bench trial conviction and a jury-of-six conviction for the same offense. [300-302]

A criminal defendant's convictions of breaking and entering in the nighttime with intent to commit a felony, larceny in a building, and malicious destruction of property of a value exceeding $100, although arising from a single incident, were not duplicitous. [302]

COMPLAINTS received and sworn to in the Hingham Division of the District Court Department on February 27, 1984.

On appeal to the jury session the cases were tried before *Charles E. Black,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Brownlow M. Speer,* Committee for Public Counsel Services, for the defendant.

*John P. Corbett,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. Following his convictions on complaints charging breaking and entering in the night time with intent to commit a felony, larceny in a building, and malicious destruction of property over the value of $100, see G. L. c. 266, §§ 16, 20, 127 (1984 ed.), the defendant appealed.[1] The Ap-

─────────────────────

[1] The cases were tried in the six-member jury session of the Hingham Division of the District Court.

peals Court affirmed the judgments. See *Commonwealth* v. *Ford,* 20 Mass. App. Ct. 575 (1985). We granted further appellate review to consider the defendant's allegations that the use of certified copies of records of his convictions containing extraneous matter deprived him of a fair trial, and that the judge's imposition of consecutive sentences "violated the defendant's right to be secure from double jeopardy." We conclude that the use of the certified conviction records with extraneous material requires a new trial.

The Appeals Court summarized the facts as follows: "Responding in the early morning of February 22, 1984, to an alarm from the Radio Shack at South Hingham Plaza, Detective Joel McGinnis and other officers found that the store had been burglarized: the glass entrance door had been bashed in, a glass display case worth $400 broken, and (according to the store manager, called to the scene) nine items worth $8,000 — two television sets and seven pieces of electronic equipment — carried off. About 7:30 that morning, McGinnis, accompanied by Detective John Kichler of the same police unit, went to the Easton police station and met John Ford, the defendant's brother. John Ford admitted complicity in the Hingham break. Upon evidence gathered in the course of the day, a warrant was obtained to search the house of one Menassian, in Saugus. A large amount of merchandise was recovered there, including perhaps five of the items taken from the Radio Shack.

"On April 10, 1984, Detective Kichler arrested the defendant upon warrant at the Boston Municipal Court, and, with Officer Larry Schofield, took him to the Hingham police station. He was led into the detectives' room and presently confronted McGinnis and Kichler. Electronic equipment, including material taken from the Radio Shack, was stacked on the floor. Given his rights, the defendant first denied any knowledge of the break, but after McGinnis asked whether he recognized the loot from the Radio Shack, and went on to mention the brother John Ford and the Menassians, the defendant admitted that he, his brother John, Vinnie Ruggerio, and Julio Caban had done the job; they had taken the stuff from the case, and 'screwed out in the car.' They 'always' wore gloves (no finger-

prints had been found). The defendant added that the articles taken from Menassian were worth $90,000, and that Menassian had put out a 'contract' for him and the other three. Then there was talk about 'protection' for the defendant and the prospect of bail or release on personal recognizance upon arraignment. When the defendant was arraigned the following day, several officers were there, apparently for 'protection.' . . .

"Testifying on his own behalf, the defendant denied he had made any confession on April 10: the implication was that the detectives were lying in order to get a conviction in this, for them, 'big' case. On cross-examination, however, the defendant conceded that he had lied in claiming that he did not know Ruggerio or Caban. He also conceded that on the night of February 23, 1984, he was in a car with these two and his brother. Further, the defendant was impeached by certified records of his numerous convictions of crime, including convictions for possession of stolen motor vehicles, operating under the influence of intoxicating liquor, operating to endanger, operating after license revocation, possession of burglarious implements, and receiving stolen property." (Footnote omitted.) *Id.* at 576-577.

The certified records of the defendant's prior convictions included docket entries which showed defaults, warrants issued, arrests on warrant, and violations of probation. The admission of unexpurgated records was error. We agree with the Appeals Court that where certified records of prior conviction are used to impeach, G. L. c. 233, § 21 (1984 ed.), "they should hew to the convictions, and extraneous entries should not pass to the jury as part of the exhibits. See *Lamoureux* v. *New York, N.H. & H.R.R.,* 169 Mass. 338, 340 (1897) (Holmes, J.); *Commonwealth* v. *Callahan,* 358 Mass. 808 (1970); *Commonwealth* v. *Dean,* 6 Mass. App. Ct. 781, 783 (1979)." *Commonwealth* v. *Ford, supra* at 578-579. If, as the judge believed, masking the extraneous material risked inducing the jury to speculate about the missing portions of the records, to the defendant's prejudice, he should have denied the Commonwealth's request to mark the records as exhibits. See *Commonwealth* v. *St. Pierre,* 377 Mass. 650, 664 (1979).

The judge should have limited the use of the records to tes-
timony "establishing the identity of the witness with the person
named in the record of conviction." *Commonwealth* v. *Calla-
han,* 358 Mass. 808, 808 (1970).

Further, the judge twice allowed the prosecutor to impeach
the defendant with a bench trial conviction and then with a
jury-of-six conviction for the same offense. This may have
given the jurors the misimpression that the defendant had been
convicted of additional offenses, clearly to the defendant's
detriment, and should not have been allowed.[2] See *Common-
wealth* v. *Buckley,* 17 Mass. App. Ct. 373, 380-381 (1984).

We do not, however, agree with the Appeals Court's conclu-
sion that the error was nonprejudicial. The only evidence that
tied the defendant to the break-in was the defendant's confes-
sion to the police officers. The confession as reported by the
officers did not reveal details that only the culprit would know,[3]
and there was no circumstantial evidence of the defendant's
involvement. The defendant denied making the confession. It
may be that the record of prior convictions so undermined the
defendant's credibility that the extraneous entries were super-
fluous to the Commonwealth's successful attempt to impeach.
Or, it may be that the records of defaults, warrants, arrests,
and probation violations, "went beyond the fact of prior con-
viction to paint the defendant as a chronic criminal and a man
at constant war with society," as the defendant argues. Credi-

---

[2] The judge compounded this error by allowing the defendant to attempt
to explain the disposition of the various proceedings. The judge should
have allowed a record only of the final disposition on each conviction and
each such conviction should have been left unexplained. *Lamoureux* v. *New
York, N.H. & H.R.R., supra.*

[3] Detective McGinnis testified to the confession as follows: "He says,
'Yeah, I did the break with my brother, Vinnie Ruggerio and Julio Ca[v]an.'
And I asked him, 'Did you wear gloves?,' and he said, 'Yeah, we always
wear gloves.' I said, 'Well, who did the break' and he said, 'Julio smashed
a window out with a baseball bat, we went in and grabbed all the items
and threw them in the trunk and we screwed out in the car.' " The substance
of Detective Kichler's version of the confession was similar. There is no
indication in the record that the police officers asked the defendant to sign
a written statement of his confession.

bility is for the jury, not for appellate courts. We will not substitute our view of a witness's credibility for that of the jury. See *Commonwealth* v. *Kelleher,* 395 Mass. 821, 827-828 (1985). Because the decisive, if not sole, issue at trial was witness credibility, and there was no evidence of the defendant's involvement apart from the disputed confession, we cannot say "with fair assurance" that the improperly admitted evidence did not have a signficant impact on the jury's decision. See *Kotteakos* v. *United States,* 328 U.S. 750, 763-765 (1946). We conclude that the defendant has shown that "the error possibly weakened his case in some significant way." *Commonwealth* v. *Schulze,* 389 Mass. 735, 741 (1983).

The defendant also argues that his "right to be secure from double jeopardy" was violated by the judge's imposition of consecutive sentences for the offenses of breaking and entering in the night time with intent to commit a felony, larceny in a building, and malicious destruction of property over the value of $100. Because the issue may arise on retrial, we address it. We agree with the Appeals Court that "[t]here was no such overlap or congruence among the three crimes of which the defendant was convicted as might call for cancelling any one of them as redundant or duplicative in the sense of *Kuklis* v. *Commonwealth,* 361 Mass. 302, 306-307 (1972)." *Commonwealth* v. *Ford, supra* at 580. Conviction for each of the offenses required the Commonwealth to prove an additional fact not required for conviction of the other two offenses. *Commonwealth* v. *Hogan,* 379 Mass. 190, 195 (1979). *Morey* v. *Commonwealth,* 108 Mass. 433, 434 (1871). *Josslyn* v. *Commonwealth,* 6 Met. 236, 240 (1843). See *Commonwealth* v. *Rivera, ante* 244 (1986).

The judgments are reversed, the verdicts set aside, and the cases remanded to the District Court jury-of-six session for a new trial.

*So ordered.*