## COMMONWEALTH vs. JOHN J. KALHAUSER.

No. 98-P-1318.

Middlesex. May 18, 2001. - August 24, 2001.

Present: GREENBERG, GILLERMAN, & DOERFER, JJ.

*Evidence,* Impeachment of credibility, Prior conviction, Illustrative exhibit, Cross-examination. *Witness,* Impeachment. *Firearms. Assault by Means of a Dangerous Weapon.*

In a criminal case in which defense counsel, by motion in limine, moved to exclude the defendant's prior conviction for manslaughter to clear the way for the defendant's testimony, and in which defense counsel never objected to the judge's erroneous ruling that the sentence imposed on the defendant's prior conviction could be read along with the conviction for impeachment purposes and never gave the judge an opportunity to cure the error, there was no substantial risk of a miscarriage of justice given the strong forensic and circumstantial evidence pointing overwhelmingly to the defendant's guilt. [342-343, 345-346]

This court concluded that, when a party uses a prior conviction to impeach a witness in a criminal case, that party is limited to establishing the identity of the witness as the person named in the record; if the witness answers in the negative or equivocates on the answer then the questioner can use the facts contained in the record of conviction to establish the identity of the witness as the person named in the record of conviction; however, those facts do not include the details of the conviction. [343-345]

In the circumstances of a trial of a criminal defendant arising out of a shooting of the victim, the judge properly permitted the prosecutor to show the jury a handgun similar to the one witnesses saw the defendant carrying on several occasions prior to the shooting of the victim [346-347]; the defendant was not entitled to required findings of not guilty on four indictments of unlawfully carrying a firearm [347]; the judge correctly handled the question of the insufficiency of the Commonwealth's proof on the charge of assault by means of a knife relating to an earlier incident involving another [347]; there was no merit to the defendant's claim that defense counsel did not effectively shield the jury from adverse publicity about the case by moving for a change of venue or seeking a sequestration order [348]; and defense counsel's cross-examination of prosecution witnesses met the standard of *Commonwealth* v. *Saferian,* 366 Mass. 89 (1974) [348].

INDICTMENTS found and returned in the Superior Court Depart-

ment, two on August 17, 1979, and four on October 31, 1995, respectively.

The cases were tried before *Robert A. Barton*, J.

*Elizabeth Doherty* for the defendant.

*Marguerite T. Grant*, Assistant District Attorney, for the Commonwealth.

GREENBERG, J. On the morning of trial, defense counsel, by motion in limine, moved to exclude the defendant's prior conviction for manslaughter to clear the way for the defendant's testimony. This motion was, for the most part, denied. We decide that the trial judge was incorrect in ruling that the sentence imposed on the prior conviction could be read along with the conviction for impeachment purposes, but that the error did not result in a substantial risk of a miscarriage of justice. There are subsidiary appellate issues concerning sufficiency of proof, other evidentiary rulings, and adequate performance of defense counsel. Those also we resolve in favor of the Commonwealth.

The defendant was convicted of armed assault with intent to murder (G. L. c. 265, § 18); assault and battery by means of a dangerous weapon (G. L. c. 265, § 15A); unlawful carrying of a firearm (four counts) (G. L. c. 269, § 10[a]); and failure to appear in court (G. L. c. 276, § 82A). We sketch what facts the jury could have found.

Just before midnight on May 19, 1979, Michael Renk drove Janet Richardson, his future wife, to the Veteran's Administration Hospital in Bedford where she worked as a nursing assistant on the night shift. As he drove past the Middlesex Community College lot, he noticed a car pull in behind him. It followed him along Route 3 to the Lowell Connector. At that time, close to the Route 495 exit, the operator of the other vehicle pulled beside the driver's side of Renk's car. As Renk looked to his left, with the vehicle three feet away, he saw an orange flash and heard a "pop." He felt a bullet strike his chin that drew blood. In relatively short order, the operator of the other vehicle squeezed off four more rounds. One went through Renk's left shoulder and another went through his back. He hunkered down, hoping to stay out of sight, as the operator of the other car — which Renk noted to be a new white 1978 Chevrolet Monte Carlo — continued to pursue him. Renk took

the Plain Street exit, determined to make it to the Lowell police station. The attacking vehicle broke off the pursuit when Renk got within one-half mile of his destination.

Acting upon Renk's report of the shooting, Lowell police found tire marks and broken window glass on the Lowell Connector, near where Renk claimed to have been shot. The next morning, Janet Richardson, who, shortly before, had ended a romantic relationship with the defendant, visited Renk in the hospital. Then she went to the defendant's home. In front of the house was a white Monte Carlo. She spoke to Chelmsford police Lieutenant Raymond McCusker, who obtained a search warrant to inspect the vehicle. That search reinforced their suspicions that the defendant was the shooter. There were marks comprised of copper and zinc on the headliner above the passenger's side window consistent with having been made by a hot brass shell casing ejected from a handgun fired by a driver extending his right arm toward the passenger's window. A total of five similar marks were found. Residue removed from the front passenger's seat, later analyzed by an FBI forensic expert, showed that the firearm was closer to the passenger side than the driver's when discharged. One bullet was recovered from Renk's body and another from his car. Both were .25 caliber and featured "a copper zinc alloy around the lead core."

When questioned by the police as to his whereabouts on the occasion in question, the defendant claimed to have been with "Debbie in Lawrence, so [he] couldn't have done the shooting." He stated further that after his date with Debbie, he went to Litchfield and then to Hudson, New Hampshire, where a police officer stopped him for driving on the wrong side of the road and gave him a verbal warning. He asserted he arrived home in Tyngsborough at around 2:30 A.M. and worked on his motorcycle through the night. He claimed that he "wouldn't own" a .25 caliber pistol.

Eventually, the investigation led the police to conclude that the defendant's story concerning his whereabouts was unsupported. When Deborah Florence was located, she turned over several letters written by the defendant to her approximately three weeks after Renk's shooting. In them, the defendant proposed that she confirm being with him on the

night in question and keep their statements to the police consistent. Eventually, in August 1979, the defendant was indicted for the assault on Renk. Released on bail, the defendant fled to Arizona but was rearrested more than·fifteen years later and brought to trial on the assault charges and several others in November, 1996.

1. *Impeachment by prior conviction.* The defendant principally challenges the judge's ruling, made at the close of the prosecution's case, that in the event he testified on his own behalf, the prosecution could impeach him with the fact of his conviction in 1971 of "a felony." He argues that the judge abused his discretion by ruling that a redacted version of the manslaughter conviction record, which included the fact that he received a seven-year State prison sentence, could be utilized on cross-examination.

In *Commonwealth* v. *Ioannides,* 41 Mass. App. Ct. 904, 905-906 (1996), this court stated, "Masking the nature of the prior offense . . . is more likely to affect the defendant unfairly than receipt in evidence of the unvarnished conviction." *Ibid.* Having said that, we concluded that if a defendant were to move expressly that the nature of the conviction be redacted when used by the prosecution to impeach, so ordering would be within the discretion of the judge. That is precisely what occurred in the instant case. Defense counsel asked the judge to allow only the conviction for the "felony" charge to be introduced at trial and that the description "manslaughter" be masked. Ultimately, the judge acquiesced to defense counsel's request, ruling that if the defendant testified, the prosecutor could impeach him with his prior conviction for a "felony."

Had matters ended there, there would be no problem. But the judge permitted the sentence (seven years) to be included in the impeachment information. However, we distinguish the fact of a conviction from its sentence. The length of the sentence, the conditions under which served, and so on are not the defendant's conduct but an uncertain sequel. See *Connecticut* v. *McClain,* 23 Conn. App. 83, 87-88 (1990). Sentencing is based on a number of factors and to a lay jury the greater the sentence, the more serious the crime. See *id.* at 88. The nature of the crime charged and conviction of it have a bearing on credibility, but

the sentence imposed does not. See *Commonwealth* v. *Ortiz*, 47 Mass. App. Ct. 777, 781 (1999). The mention of the sentence has the potential to cause unfair prejudice to the witness by inviting the jury to speculate about the details and seriousness of the conviction and consider the conviction for reasons other than credibility.

While it has been repeatedly held that the statutory language of G. L. c. 233, § 21, allows the use of the full record of the defendant's convictions to impeach the defendant, that rule has been progressively narrowed over the years. Compare *Commonwealth* v. *Connolly*, 356 Mass. 617, 627, cert. denied, 400 U.S. 843 (1970) (not error for the trial judge to allow the prosecutor to read from the record of conviction the crime that the defendant had first been charged with, even though he ultimately was not convicted of that crime); *Commonwealth* v. *Ford*, 397 Mass. 298, 300-301 (1986) (error to admit certified records of prior convictions, including docket entries which showed defaults, warrants issued, arrests on warrants, and violation of probation); *Commonwealth* v. *Millyan*, 399 Mass. 171, 184-185 (1987) (not error to allow the prosecutor, while reading from the record of conviction, to mention a charge of which the witness was not ultimately convicted, but the "better practice" is not to mention it). Cf. *Commonwealth* v. *Gagliardi*, 29 Mass. App. Ct. 225, 238 (1990). As the foregoing cases indicate, we have moved away from the position that the impeaching party can mention anything in the record of conviction, toward recommending that the better practice is to avoid mentioning potentially prejudicial material in the criminal record, see *Millyan*, 399 Mass. at 184-185, and declaring that it is error as a matter of law to allow the mention of certain information in the record of conviction, see *Ford*, 397 Mass. at 300-301. The reading from certified records should "hew to the convictions," and extraneous entries should not pass to the jury as part of the exhibits. See *id.* at 300. The use of records should be limited to establishing the identity of the witness with the person named in the record of conviction. See *Commonwealth* v. *Callahan*, 358 Mass. 808 (1970); *Ford*, 397 Mass. at 301.

Our decision today makes explicit what has been alluded to in the *Millyan*, *Ford*, and *Ortiz* cases. When a party uses a prior

conviction to impeach a witness, that party is limited to establishing the identity of the witness as the person named in the record.[1] If the witness answers in the negative or equivocates on the answer then the questioner can use the facts contained in the record of conviction to establish the identity of the witness as the person named in the record of conviction.[2] Those facts, however, do not include the details of the conviction, e.g., the victim's name or circumstances surrounding the event. Cf. *Commonwealth* v. *Cameron*, 31 Mass. App. Ct. 928, 929 (1991) (factual circumstances behind conviction must be left unexplained). Since matters contained in the record of convic-

[1] When an individual is being impeached by more than one conviction, the impeaching party is permitted to ask about the time and place of the conviction so that the witness can understand about which conviction the impeaching party is inquiring.

[2] Other State and Federal courts addressing the issue of the admissibility of the length of the sentence when impeaching a witness by prior conviction have developed three different approaches. Some courts have allowed the sentence accompanying a witness's conviction to be admitted if that conviction is introduced to impeach the defendant. See *United States* v. *Albers*, 93 F.3d 1469, 1480 (10th Cir. 1996), citing *United States* v. *Wolf*, 561 F.2d 1376, 1381 (10th Cir. 1977); *Gafford* v. *State*, 440 P.2d 405, 413 (Alaska 1968), overruled on other grounds by *Fields* v. *State*, 487 P.2d 831 (Alaska 1971); *Foster* v. *State*, 304 Md. 439, 469-470 (1985), cert. denied, 528 U.S. 910 (1999); *State* v. *Washington*, 383 S.W.2d 518, 523 (Mo. 1964); *State* v. *Finch*, 293 N.C. 132, 141 (1977); *State* v. *Sinclair*, 57 N.J. 56, 63 (1970); *State* v. *Baldridge*, 144 N.E.2d 656 (Ohio Ct. App. 1956); *Webb* v. *State*, 445 P.2d 531, 532-533 (Okla. Crim. App. 1968); *Jackson* v. *State*, 161 Tex. Crim. 561, 563 (1955); *State* v. *Sayward*, 66 Wash. 2d 698, 699 (1965).

Other State and Federal courts have held by case decision that evidence of the sentence for a prior conviction may not be included as part of the impeachment process. See *United States* v. *Robinson*, 8 F.3d 398, 409 (7th Cir. 1993); *State* v. *Bloomer*, 156 Ariz. 276, 280 (Ct. App. 1987); *People* v. *Rappuhn*, 390 Mich. 266, 273-274 (1973); *Murray* v. *State*, 266 So. 2d 139, 142 (Miss. 1972), cert. denied, 411 U.S. 907 (1973); *Latham* v. *State*, 152 Neb. 113, 115-116 (1949).

A third group prohibits the admission of a defendant's sentence for a prior conviction if the defendant has admitted the fact of that conviction, but allows the mention if the defendant denies the conviction or equivocates on questions regarding a prior conviction. See *People* v. *Howard*, 166 Cal. App. 2d 638, 648 (1958); *State* v. *Robinson*, 227 Conn. 711, 736 (1993); *State* v. *Corn*, 215 S.C. 166, 173 (1949).

We find this third group most persuasive because it provides a balance between the purpose of impeaching a witness through a prior conviction, the opposing party's statutory right to impeach the witness, and the witness's right not to have unfairly prejudicial information go to the jury.

tion, other than the conviction itself, have little to no probative value on the issue of credibility and there exists the potential for unfair prejudice to the defendant, it is error for the trial judge to allow the mention of those materials unless the defendant equivocates on questions attempting to establish him or her as the person named in the record.

Having decided that the judge mistakenly ruled that the impeachment of the defendant could include the nature of his sentence for the felony conviction, the question remains under what standard should we review the trial judge's ruling. We turn to the circumstances of the judge's ruling to test whether defense counsel adequately preserved the question for appeal. Defense counsel never formally objected to the mention of the length of the sentence attached to the masked conviction. After the Commonwealth rested its case, defense counsel "strongly" urged the court to allow the substitution of the word "felony" for "manslaughter," stating that masking the conviction would enable the defendant to take the stand. The judge agreed, and then repeated, for defense counsel's benefit, the proposed impeachment question, which included a mention of the length of the sentence. Then, defense counsel requested an additional two minutes to confer with the defendant, because counsel had not realized that the question would include the mention of the length of the sentence. After conferring with the defendant, he informed the judge that the defendant would not take the stand.

Here we cannot assume that the matter to which the defendant now objects or the grounds therefore were apparent from the exchange between the judge and defense counsel. See *Composto* v. *Massachusetts Bay Transp. Authy.*, 48 Mass. App. Ct. 477, 480-481 (2000) (where counsel fails to state distinctly the matter to which he objects and the grounds of his objection, mere conversation with a judge does not constitute an objection). The trial judge indicated that he saw the defendant nodding his head as he was reading the allowable question and interpreted this gesture to reflect an understanding of his ruling. The defendant could have asked the trial judge to exclude the mention of the length of the sentence, but instead defense counsel elected simply to inform the judge of his client's decision not to testify. Based on these circumstances it is not clear

that the trial judge was on notice of the defendant's objection to the mention of the sentence.

Since the defendant's counsel never objected to the mention of the sentence and never gave the trial judge an opportunity to cure the error, the proper standard of review is whether the trial judge's error resulted in a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Drumgold*, 423 Mass. 230, 249 (1996). The Commonwealth's case against the defendant can be "characterized as one in which the evidence pointed overwhelmingly to guilt." See *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 22 (1996). Had the defendant testified regarding his version of events, this would not have undercut the Commonwealth's compelling forensic and strong circumstantial evidence that the defendant was the shooter. There were no percipient witnesses to the assault on Renk, but the description of the white Monte Carlo from which the gunfire emanated corresponded to the vehicle that the defendant had rented on the evening in question. Another witness turned over incriminating letters, including one concerning an attempt to concoct an alibi. There was significant corroborative evidence that the defendant possessed a .25 caliber-type weapon, the same type which was used to fire the shots at Renk. Additionally, it defies the imagination to believe that a jury could conclude, in light of all the other evidence, that there was a reasonable explanation for the defendant's fifteen-year absence from the Commonwealth, other than consciousness of guilt. See *Commonwealth* v. *Paniaqua*, 413 Mass. 796, 803 n.7 (1992) (evidence of consciousness of guilt alone cannot support a conviction, but evidence of such a state of mind, when coupled with other probable inferences, may be sufficient to amass the quantum of proof necessary to prove guilt). In short, this was not a "classic duel of credibility." See *Commonwealth* v. *Ferreira*, 373 Mass. 116, 127 (1977). See also *Ford*, 397 Mass. at 301-302. Given the strong forensic and circumstantial evidence recounted above, there is no substantial risk of a miscarriage of justice.

2. The remaining issues argued by the defendant are insufficient to warrant reversal of the various convictions. We deal with them summarily.

(a) The judge properly permitted the prosecutor to show the

jury a handgun similar to the one witnesses saw the defendant carrying on several occasions prior to the assault on Renk. Both Janet (Richardson) Renk, Deborah Florence, and a former co-worker of the defendant's, Robert LaCourse, testified that the facsimile was "similar" in size to the gun the defendant carried in May 1979, and, according to Florence, was small, dark, and fit in the palm of his hand. See *Commonwealth* v. *Luna,* 46 Mass. App. Ct. 90, 93-94 (1998). Moreover, the judge made certain that the jury understood the illustrative purpose of the prototype by instructing it was not the defendant's weapon. Compare *Commonwealth* v. *Stewart,* 398 Mass. 535, 542 & n.6 (1986); *Luna, supra* at 94. Furthermore, the facsimile was relevant to prove that the defendant's gun had a barrel of less than 16 inches as required under G. L. c. 269, § 10(*a*), and G. L. c. 140, § 121.

(b) The defendant was not entitled to required findings of not guilty on the four indictments of unlawfully carrying a firearm. The circumstantial evidence sufficed to show, on each of four occasions, that the weapon was functional — an element of the charge. As a matter of logic, evidence that a gun was fired tends to prove its operability. Here there was proof that the defendant fired his gun in mid-April and on May 20, 1979. That proof tended to show that it worked when he carried it on May 5 and on another occasion in the same month. There were other admissions by him to LaCourse and McCusker concerning his possession of a working firearm that the jury reasonably could conclude related to the .25 caliber gun.

(c) The judge carefully handled the question of the insufficiency of the Commonwealth's proof on the charge of assault by means of a knife relating to an earlier incident involving Richardson. After the judge allowed the required finding motion on the charge, he told the jury, "I tell you now that that indictment has been withdrawn from further consideration by you, the jury. The jury is advised that you should not speculate about the reason for the withdrawal . . . ." The judge's instruction followed our suggestion in *Commonwealth* v. *Pasciuti,* 12 Mass. App. Ct. 833, 840 & n.7 (1981). In any event, the defendant raised no objection, and there is no risk, let alone a substantial one, of a miscarriage of justice.

(d) The defendant's claim that defense counsel did not effectively shield the jury from adverse publicity about the case by moving for a change of venue or seeking a sequestration order is without merit.

There was no showing that any of the petit jurors were exposed to any extrinsic information in the newspapers or other media outlets concerning the case. The trial judge asked appropriate voir dire questions concerning the publicity issue during juror selection (one venire member was excluded who had read something about the case in a local paper). He also warned the petit jury not to read coverage of the case by the newspapers. See *Commonwealth* v. *Maimoni*, 41 Mass. App. Ct. 321, 331-332 (1996). Cf. *Commonwealth* v. *Ferguson*, 425 Mass. 349, 352-354 (1997).

(e) Finally, we have examined the transcript of counsel's cross-examination of the prosecution's witnesses and conclude that any omissions were tangential and that defense counsel's cross-examination technique met the well-known *Commonwealth* v. *Saferian*, 366 Mass. 89 (1974), standard.

*Judgments affirmed.*