Lauriat, Peter M., J.
Kénneth Dykens (“Dykens”) stands indicted on seventeen charges arising from an incident that allegedly occurred on the evening of February 10, 2005, at 124 Granite Street in Malden, Massachusetts. The indictments allege attempt to commit unarmed burglary (001, 003 and 005), assault with intent to maim (007), assault and battery by means of a dangerous weapon (009), possession of burglarious instruments (Oil), malicious destruction of property over $250 (013), being a habitual criminal (002, 004, 006, 008, 010, 012 and 014), assault and battery on a public employee (015 and 016), and resisting arrest (017).
■ Dykens has now moved to dismiss two of the three charges of attempted breaking and entering (003 and 005), on the ground that they are duplicitous. He further moves to dismiss the charges of assault and battery with a dangerous weapon (009) and malicious destruction of property (013), on the grounds that the grand jury did not hear sufficient evidence to establish probable cause to indict him on those charges. Dykens also seeks dismissal of the charge of being a habitual offender (004, 006, 010 and 014) that corresponds to each of these particular indictments.
BACKGROUND
On March 29, 2005, a grand jury sitting in Cambridge heard testimony from Officer Brian Killion and Officer Robert Selfridge alleging the following facts. On February 10, 2005 at approximately 2:30 a.m., the Malden police received a call for assistance from 124 Granite Street in Malden, the residence of John and Jacqui Cram. The Crams told officers that they were asleep on the second floor when John Cram (“John") *731 was awoken by a loud noise from downstairs. John went downstairs to investigate. When he entered the kitchen, he saw that one of the glass doors leading from the kitchen to a deck had been broken, and there was a large rock amidst the broken glass on the floor. When he approached the door he also noticed that a ladder he kept at the side of the house had been moved to the deck and was partially propped up against the house. John then saw the shadow of a person running across the back yard. Police later found a screen on the ground outside the house that had been on the first-floor window just above the cellar door. It appeared to police that someone had stood on the ledge over the cellar door and attempted to gain entry through that window.
When the police arrived, they followed footprints in the snow leading to a wooded area nearby. There they found Dykens. When the officers tried to arrest him, Dykens struggled, striking out at the officers, gouging Officer Killion’s eye with his finger, and kicking Officer Killion in the face with his shod foot.
DISCUSSION
I.
Dykens argues that the attempted breaking and entering events alleged by the Commonwealth, including the removal of the screen from a window, the propping of a ladder against the house and the throwing of a rock through a sliding glass door constitute only one continuing attempt to break into the Crams’ house. He therefore moves to dismiss two of the three indictments for attempted breaking and entering and the corresponding habitual offender charges.
“[W]here a single statute is involved and the issue is whether two or more discrete offenses were proved under that statute rather than a single continuing offense, the question becomes whether the Legislature intended to authorize more than one conviction.” Commonwealth v. Decicco, 44 Mass.App.Ct. Ill, 112 (1998) (internal citations omitted); Commonwealth v. Levia, 385 Mass. 345, 347-51 (1982). “Ambiguiiy concerning the ambit of criminal statutes should be resolved in favor of lenity.” Commonwealth v. Donovan, 395 Mass. 20, 29 (1985).
In this case, General Laws c. 274, §6 is clear. It prohibits the “attempt to commit a crime by doing any act toward its commission that fails in its perpetration . . .’’If the legislature intended for a single attempt charge to cover all overt acts directed toward the commission of a single crime, it would have used the words “any act or acts,” rather than “any act.” “It is a fundamental principle of statutory construction that ‘statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result.’ ” Commonwealth v. Hatch, 438 Mass 618, 632 (2003), citing Sullivan v. Brookline, 435 Mass. 353, 360 (2001). Consequently, Indictments 003, 004, 005, and 006 must stand.
II.
Dykens next argues that the charge of assault and battery by means of a dangerous weapon (009) must be dismissed because the grand jury did not hear sufficient evidence to find probable cause to indict him for this offense. Commonwealth v. McCarthy, 385 Mass. 160, 163 (1982). Citing Commonwealth v. Lord, Dykens argues that the Commonwealth is required to produce evidence that the alleged victim of the assault and battery was hurt, or suffered an injury that was “more than merely transient and trifling.” Lord, 55 Mass.App.Ct. 265, 269 at n.7 (2002). Dykens misreads this portion of Lord, which discusses not the requisite degree of bodily harm that the victim must suffer, but whether the deadly weapon is capable of causing death or the requisite degree of bodily harm. Id. “A conviction for assault and battery by means of a dangerous weapon requires proof only that the defendant intentionally and unjustifiably used force, however slight, upon the person of another by means of an instrumentality capable of causing bodily harm.” Quincy Mut Fire Ins. Co. v. Abernathy, 393 Mass. 81, 87 (1984).
The grand jury heard testimony that Dykens struggled with officers and then kicked Officer Brian Killion in the face with his shod foot. “Footwear, when used to kick, can be a ‘dangerous weapon.’ ” Commonwealth v. Marrero, 19 Mass.App.Ct. 921, 922 (1984). The grand jury heard sufficient testimony to support the indictment for assault and battery with a dangerous weapon in this case.
III.
Dykens also argues that the indictment for malicious destruction of property over $250 (013) must be dismissed along with the corresponding habitual criminal charge (014) because a defendant cannot have both acted maliciously, as required for this indictment, and have been attempting to commit burglary, as charged in several of the other indictments.
The real issue in this case, however, is whether the grand jury heard evidence that the destruction was both wilful and malicious. G.L.c. 266, §127. A defendant acts wilfully if he “intended both the conduct and its harmful consequences; wilful conduct is ‘intentional and by design in contrast to that which is thoughtless or accidental.’ ” Commonwealth v. Cimino, 34 Mass.App.Ct. 925, 927 (1993). Certainly throwing a rock through a window during an attempted breaking and entering is wilful.
However, it cannot be inferred from the evidence presented to the grand jury, that the destruction of property was malicious. It is well established that “ ‘malice’ requires a showing that the actor was motivated by cruelty, hostility or revenge.” Id.; Commonwealth v. Armand, 411 Mass. 167, 170 (1991); Commonwealth v. Schuchardt, 408 Mass. 347, 352 (1991); and Commonwealth v. Peruzzi, 15 *732 Mass.App.Ct. 437, 443 (1983). The grand jury heard no evidence that the defendant acted with cruelty, hostility or revenge. “An essential element of the crime may not be based on surmise, conjecture, or guesswork.” Commonwealth v. Moreton, 48 Mass.App.Ct. 215,217(1999). The indictment for malicious destruction of property, and the corresponding habitual criminal charge must therefore be dismissed.[1] McCarthy, 385 Mass, at 163.
ORDER
For the foregoing reasons, the defendant’s Motion to Dismiss is DENIED as to indictments 003, 004,005, 006, 009 and 010, and ALLOWED as to indictments 013 and 014.

While the Commonwealth cites Commonwealth v. Ford for the proposition that breaking glass during a robbery amounts to malicious destruction of property, the defendant in that case “did not dispute that the evidence ... was ample to support the verdicts,” but argued other points. Ford, 20 Mass.App.Ct. 575, 577 (1985).