## COMMONWEALTH vs. STEVEN WHITE.

No. 88-P-1074.

Suffolk.  June 12, 1989. — September 20, 1989.

Present: DREBEN, KASS, & SMITH, JJ.

*Evidence*, Consciousness of guilt, Credibility of witness, Prior conviction, Criminal records. *Practice, Criminal*, Instructions to jury.

At the trial of indictments for kidnapping and aggravated rape no substantial risk of a miscarriage of justice was created by the judge's allowing the admission of evidence that the defendant used a false name after the commission of the crimes for which he was indicted and that he had not cooperated with the police at the time of his arrest. [792-794]

At a criminal trial it was within the judge's discretion to admit in evidence certified copies of records of the defendant's prior convictions. [794-795]

At a criminal trial, admission of certified copies of records of the defendant's prior convictions, which contained extraneous material showing the names of the victims, a probation surrender and a default, and an alias, did not create a substantial risk of a miscarriage of justice. [795]

At the trial of indictments for kidnapping and aggravated rape no substantial risk of a miscarriage of justice was created either by the judge's instructions to the jury as to inferences that they might draw from the victim's conduct or by his not instructing the jury on consciousness of guilt. [795-796]

INDICTMENTS found and returned in the Superior Court Department on October 4, 1984.

The cases were tried before *Charles M. Grabau*, J.

*Jane Larmon White*, Committee for Public Counsel Services, for the defendant.

*Julie W. Heflin*, Legal Assistant to the District Attorney (*David B. Mark*, Assistant District Attorney, with her) for the Commonwealth.

SMITH, J. The defendant was the subject of two indictments that charged him with kidnapping and three counts of aggravated rape. He was convicted by a jury of all the charges and

has appealed. He claims that (1) the admission of evidence of his purported bad character and propensity for bad acts was prejudicial error and that (2) the judge misinstructed the jury as to inferences that they might draw from the victim's conduct and failed to instruct the jury on consciousness of guilt. Before discussing the issues, we summarize the evidence presented by the Commonwealth.

In July, 1984, the victim, a seventeen year old woman from a small town in Connecticut, visited her boyfriend and his mother in Boston. On July 14, her boyfriend's mother dropped her off at the Greyhound bus terminal in Boston at 9:00 A.M. in order for her to catch the 10:00 A.M. bus to Connecticut. She was standing in front of the bus terminal looking for a place to have breakfast when she was approached by the defendant, a thirty-two year old man. The defendant attempted to talk to her but the victim walked away, trying to ignore his advances. The defendant persisted and asked the victim her name. She did not respond right away but eventually told him that she was waiting for someone and looking for somewhere to buy breakfast. The defendant told the victim that, if she agreed to tell him her name, he would treat her to breakfast. After about fifteen minutes of conversation, she told the defendant that, as long as she could be back in time to catch her bus, she would go with him to get breakfast.

The victim got into the defendant's automobile, and they drove for about fifteen minutes until they arrived at a fast food restaurant. During the drive, she told the defendant that he looked familiar to her. He gave her the name of a famous movie star and indicated that he was traveling incognito so that people would not recognize his true identity. The victim believed him.

After they ate, they drove around Boston, despite the victim reminding the defendant of her need to catch the bus. He told her that he would drive her to Connecticut. She agreed because she realized that she had already missed the bus. The defendant then obtained some marijuana and drove to a park where they both smoked a marijuana cigarette. The defendant then made advances to the victim and forced her to perform oral sex on him.

After this episode the defendant told the victim they were going to get ice cream. The victim went to a telephone to call her father to let him know she was going to be late. After getting ice cream, the defendant again drove the victim around town. He eventually stopped in front of an apartment complex. The victim asked him where he was going. He stated that he had to visit someone before he drove her to Connecticut.

The defendant got out of the automobile and walked around to the passenger side. He opened the door, took hold of the victim's hand with a tight grip and said, "Come up with me." They walked toward the apartment complex and then up three flights of stairs to an apartment. Once inside the apartment, the defendant shut the door and engaged the lock. At that time, the defendant told her that he was not the famous movie star she thought he was; in fact, the victim testified, the defendant told her he was a pimp. The victim, now terrified, began looking for a telephone. The defendant told her that she "wasn't going anywhere." The victim said she wanted to leave. The defendant grabbed her hand and brought her into the bedroom where he forced her to perform fellatio and additionally raped her vaginally.

After trying to figure out how to get away, the victim attempted to convince the defendant that she was hungry and wanted to go out to eat. The defendant finally agreed. Once outside, the victim spotted a police cruiser and silently signaled it, mouthing the words "Help — Help me." The officer turned the cruiser around and parked it in such a manner as to prevent the defendant's automobile from pulling away from the curb. He approached the automobile and asked the defendant for his driver's license and automobile registration. The defendant said, "What's the beef?" to which the officer responded, "I don't know. That is what I'm trying to find out. The young lady called me." After the defendant produced a driver's license and a Hertz rental agreement, he was ordered out of the automobile and questioned by the officer. The victim was also questioned. She did not tell the officer that she had been raped by the defendant but stated that she wanted to be taken to the Greyhound bus terminal. The defendant was released and the

victim was driven to the terminal by the officer. Once there, she called her boyfriend and told him she had been raped. The boyfriend and his mother picked her up at the bus station. After she told them what had transpired, they took her to a hospital. She then went to a police station where she told a detective what had occurred. As a result, the defendant was arrested. At the trial, in addition to the victim's testimony, her boyfriend, his mother, and the detective gave "fresh complaint" evidence. The detective also testified that she had observed bruises on the victim's arms.

The defendant testified that at the time of the incident he was the regional director of marketing and promotion for a record company. He stated that he had met the victim under the circumstances that she had related in her testimony. He testified that she had voluntarily accompanied him all day, including the visits to the park and the apartment where the various sexual acts occurred. He admitted that he had pretended to be a famous movie star but denied that he later said that he was a pimp. The defendant claimed the victim consented to all the acts of sexual intercourse which were the subject of the various counts in the indictment.

We now discuss the issues raised by the defendant. He "acknowledges that, since the errors and issues raised on appeal were not objected to or raised during trial, our review is limited to whether a substantial risk of a miscarriage of justice occurred." *Commonwealth* v. *Salcedo*, 405 Mass. 346, 347 (1989). See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

1. *Admission of evidence of defendant's purported bad character.* The defendant claims that it was prejudicial error to admit evidence that (a) he used a false name after the commission of the crimes for which he was indicted and (b) he had not cooperated with the police at the time of his arrest. The defendant also contends that it was error for the judge to admit certified copies of his criminal convictions as exhibits.

(a) *The evidence of the defendant's use of a false name.* A police officer testified that when he asked the defendant for his driver's license and automobile registration he received a

California driver's license with the defendant's photograph affixed to it. The license was in the name of "William Orrin Woods, Jr." In place of the automobile registration, the defendant produced a Hertz rental agreement with his correct name on it.[1] The defendant argues that the evidence of the false name was not admissible as consciousness of guilt because, at the same time he used a false name, he produced a document in his correct name.

The prosecutor did not refer to the use of the false name during the remainder of the trial or in his closing argument. Further, the judge did not instruct the jury that they might infer consciousness of guilt on the defendant's part because of his use of a false name. Therefore, even assuming, without deciding, that the admission of such testimony was error, it did not create a substantial risk of a miscarriage of justice.

(b) *Introduction of noncooperation of the defendant with the police at time of the arrest and booking.* The defendant testified on direct examination that he lived at one address in Dorchester but had "access" to an apartment in Boston, the place where the victim claimed some of the sexual assaults took place. He also admitted on direct examination that he had given the police his driver's license with a false name on it. On cross-examination, the prosecutor, without objection, asked the defendant the name and also the address that he had given the police at the time he was arrested and booked. The defendant responded that he did not give the police his name and address but rather had "given them the paperwork." On redirect examination, the defendant testified that he had not been given his Miranda warnings when he was arrested; he was not told of his right to remain silent but that he remained silent because he was aware of his "rights"; he had known the arresting officer for fifteen years and did not like him; and that he requested the right to call a lawyer because he intended to have the lawyer do the talking for him.

---

[1] The fact that the driver's license contained a different name from the one on the rental agreement escaped the officer's attention.

The defendant claims that the questions asked by the prosecutor were prejudicial because they were designed to show that "the defendant behaved in a churlish fashion by failing to converse with the police" at the time of his arrest and while being booked. The defendant argues that the questions also constituted prejudicial error because they permitted the jury to infer the defendant's guilt from his silence at arrest and at the booking procedure and from his expressed desire to obtain the services of an attorney.

It is readily apparent from the record that the prosecutor was attempting to establish that the defendant had used a false name or even a false address at the time of his arrest or at the booking stage. Considering the defendant's testimony on direct examination on those points, it was proper for the prosecutor to ask such questions. There was nothing in the defendant's testimony that would have alerted the judge or the prosecutor that the defendant would answer that he had elected to remain silent at the time of his arrest or had subsequently requested an attorney. Most of the evidence that the defendant now claims was damaging came on redirect examination and not from the prosecutor's questions. Further, none of the testimony elicited by the prosecutor was used by him during the remainder of the trial or in his closing argument in an attempt to establish the defendant's guilt. We conclude that, in the circumstances, the prosecutor's questions were not error and, in any event, did not create a substantial risk of a miscarriage of justice.

(c) *Introduction of defendant's prior convictions.* The defendant, in response to questions from his lawyer, testified that he had been convicted in Federal District Court for the Eastern District of New York in October, 1986, for a crime relating to counterfeit money; that he had been convicted in the Municipal Court of the City of Boston in 1970 for receiving stolen property and also for larceny; and that he had been convicted in a Los Angeles County court for "concealing" a crime. On cross-examination, the prosecutor produced the certified copies of the defendant's criminal convictions. After the defendant stated that he was the person named in the documents, the prosecutor requested the copies be entered in evi-

dence as exhibits. The judge asked defense counsel if there was any objection. Defense counsel responded that he did not object and the certified copies were admitted as exhibits. At the request of defense counsel, the judge gave an instruction to the jury as to the limited role played by such evidence.

The defendant argues on appeal that, because the testimony had already established the identity of the defendant with the person named in the copies of the convictions, it was error to admit the copies as exhibits. We disagree. It is within a judge's discretion to admit a certified copy of a criminal conviction in evidence as an exhibit. See *Commonwealth* v. *St. Pierre*, 377 Mass. 650, 664 (1979) ("The judge was not obliged to admit the records as exhibits, though he could have chosen to do so"). The defendant also claims that it was error to admit the certified copies because they contained extraneous materials.[2] The material consisted of the names of the victims, a probation surrender and a default, and one alias. That material was insignificant when compared to the prejudicial matter that reached the jury in *Commonwealth* v. *Ford*, 397 Mass. 298, 300 (1986), and *Commonwealth* v. *Clark*, 23 Mass. App. Ct. 375, 380 (1987). Although it was error for the extraneous matter to reach the jury, it was not of "a type and seriousness which should lead [the court] to reverse in the absence of a proper [objection]." *Commonwealth* v. *Freeman*, 352 Mass. at 563-564.

2. *The judge's instructions to the jury*. The judge, in his instructions to the jury, stated that "[e]vidence that the victim later condoned the action or forgave the other person is not

---

[2] The prosecutor and defense counsel did not heed the decision in *Commonwealth* v. *Clark*, 23 Mass. App. Ct. 375, 380-383 (1987), decided six months prior to the commencement of this trial, where we considered the problem of extraneous evidence on certified copies of convictions. We stated that "[i]t takes no hindsight on our part to note that both the prosecutor and defense counsel were wrong in not examining the certified copies of convictions before they were introduced as exhibits. It should not be necessary for us to state the obvious — it is the function of trial attorneys, *not the trial judge*, to examine materials before they are admitted as exhibits to make sure that they do not contain prejudicial matter" (emphasis in original). *Id.* at 383.

Appellate counsel were not trial counsel.

relevant to the issue of consent." The defendant argues that the quoted passage from the charge undercuts his defense because the jury could have interpreted that sentence to mean that condonation, in the form of the victim's failure to complain, was not relevant on the issue of consent.

We "view the charge in its entirety since the adequacy of instructions must be determined in light of their over-all impact on the jury." *Commonwealth* v. *Murray*, 396 Mass. 702, 705 (1986), quoting from *Commonwealth* v. *Sellon*, 380 Mass. 220, 231-232 (1980). The judge correctly instructed the jury on the essential elements of the crimes for which the defendant was being tried. He informed the jury that the Commonwealth had the burden of proving beyond a reasonable doubt that the "sexual intercourse allegedly performed by the defendant on [the victim] was performed or committed without [her] consent." He instructed the jury that "[t]he consent must be given at the time of the act" and that the jury "may consider evidence of the victim's state of mind at the time of the alleged incident on the issue of consent." There is nothing in the instructions that would lead reasonable jurors to believe that failure of the victim to complain was not relevant on the issue of consent.

The defendant also argues that it was error for the judge not to instruct the jury as to consciousness of guilt. The only possible basis for such an instruction was evidence that the defendant had given to the police his driver's license with a false name on it. The defendant's experienced trial counsel did not request any instruction on consciousness of guilt and made no objection to its absence. In the circumstances there was no error.

*Judgments affirmed.*