## COMMONWEALTH vs. DANIEL PARZYCK.

No. 96-P-1491.

Hampshire. December 4, 1997. - April 30, 1998.

Present: WARNER, C.J., PERRETTA, & BECK, JJ.

*Escape. Imprisonment,* Escape. *Habitual Offender. Evidence,* Prior conviction, Criminal records. *Constitutional Law,* Equal protection of laws. *Practice, Criminal,* Instructions to jury.

At the trial of an indictment alleging that the defendant was a habitual criminal under G. L. c. 279, § 25, there was no error in the submission to the jury of unredacted records of the defendant's prior convictions and incarcerations. [656-657]

At the trial of an indictment alleging escape under G. L. c. 268, § 16, for the defendant's failure to return from a furlough granted pursuant to G. L. c. 127, § 90A, the judge correctly denied the defendant's motion to dismiss brought on equal protection grounds. [657-659]

The pendency of an appeal from the denial of postconviction relief does not preclude the use of the underlying conviction for purposes of the habitual criminal statute, G. L. c. 279, § 25. [659-661]

At the trial of an indictment for the defendant's escape from a house of correction while on furlough, there was no error in the judge's instruction on the intent required to support a conviction [661-662], and the judge was not required to instruct on the effect of the defendant's intoxication on the element of intent [662].

INDICTMENTS found and returned in the Superior Court Department on January 18, 1994.

The cases were tried before *William H. Welch,* J.

*Richard N. Foley* for the defendant.

*Cynthia M. Pepyne,* Assistant District Attorney, for the Commonwealth.

WARNER, C.J. While serving a sentence in the Hampshire County house of correction, the defendant was granted a special ten-hour furlough for Thanksgiving Day, 1993, under the provi-

sions of G. L. c. 127, § 90A.[1] He began drinking at some point during the day, failed to return from the furlough, and remained at large until December 28, 1993, at which time he was recaptured and indicted for the crime of escape, and for being a habitual criminal under G. L. c. 279, § 25.[2] A Superior Court jury convicted the defendant of escape, and, at a subsequent proceeding, of being a habitual criminal.[3] Pursuant to the terms of G. L. c. 279, § 25, he was sentenced to ten years at the Massachusetts Correctional Institution at Cedar Junction (MCI, Cedar Junction), the maximum term provided by law. We affirm.

1. *Introduction of unsanitized records of incarceration.* After being found guilty of escape for failure to return from furlough, the defendant elected a jury trial with respect to the habitual criminal count. During the second phase of the bifurcated trial, the judge allowed the Commonwealth to introduce documents, over the defendant's objection, showing that he had been committed to MCI, Cedar Junction, on two previous occasions, for terms of from three to five years and from five to seven years respectively.[4] The defendant concedes that the documents were relevant and, therefore, admissible to prove an essential element

---

[1]General Laws c. 127, § 90A, provides, in relevant part:

> "The commissioner may extend the limits of the place of confinement of a committed offender at any state correctional facility by authorizing such committed offender . . . to be away from such correctional facility . . . for a specified period of time . . . ."

[2]General Laws c. 279, § 25, provides, in relevant part:

> "Whoever has been twice convicted of crime and sentenced and committed to prison . . . shall, upon conviction of a felony, be considered an habitual criminal and be punished by imprisonment in the state prison for the maximum term provided by law as a penalty for the felony for which he is then to be sentenced."

[3]To support the defendant's conviction as a habitual criminal, the Commonwealth relied on his 1984 convictions of breaking and entering in the nighttime with intent to commit a felony, stealing in a building, and receiving stolen property over one hundred dollars, and his 1989 convictions of breaking and entering in the nighttime with intent to commit a felony and larceny in a building.

[4]The documents were characterized as the defendant's "judgment and commitment . . . papers," and consisted of the mittimus, inmate sentence listing,

of the offense.[5] He maintains, however, that before being admitted, they should have been sanitized of references to (1) a subsequent house of correction sentence; (2) additional, unrelated charges not the basis of the offense for which he was on trial; and (3) his parole status, including past denials of parole and a parole detainer from his arrest.

This case is not like *Commonwealth* v. *Ford*, 397 Mass. 298 (1986), the case on which the defendant relies, or *Commonwealth* v. *Clark*, 23 Mass. App. Ct. 375 (1987), in which we determined that "the use of certified copies of records of the defendant's prior convictions containing extraneous matter deprived him of a fair trial." *Clark, supra* at 381. In both those cases, the defendant's credibility was a "decisive issue in th[e] case." *Id.* In addition, in both cases, the evidence against the defendant was weak. See *Ford, supra* at 302; *Clarke, supra* at 382. Here, the defendant's credibility was not at issue. His prior convictions were admitted not for impeachment purposes but to prove that he had twice been committed to prison, an essential element of the offense with which he was charged. Indeed, it is undisputed that the defendant had previously been convicted, sentenced, and committed to prison as required under the statute.[6] While the better practice would have been to redact any extraneous entries from records of the defendant's incarceration before admitting them in evidence, in these circumstances, we perceive no risk that the jury impermissibly convicted the defendant of being a habitual criminal on the basis of those entries. Cf. *Commonwealth* v. *White*, 27 Mass. App. Ct. 789, 795 (1989) (admission of certified copies of prior convictions containing extraneous matter for impeachment purposes did not create a substantial risk of a miscarriage of justice).

2. *Denial of the defendant's motion to dismiss the escape indictment.* The defendant next argues that the judge should have granted his motion to dismiss the escape indictment on the ground that the prison sentence of ten years imposed under G. L. c. 268, § 16, the general escape statute, violated his right

---

administrative chronology, parole papers, and certificate of discharge for two separate sentences.

[5]General Laws c. 279, § 25, requires that the Commonwealth prove beyond a reasonable doubt not only that the defendant was previously convicted and sentenced for two prior felonies, but also that he was committed to prison.

[6]While the defendant did challenge the applicability of one of the prior convictions under the statute, he never claimed that he was not convicted.

to equal protection guaranteed by the Federal and State Constitutions. He first argues that under the strict scrutiny standard of review, the classifications created between prisoners who fail to return from work release programs authorized under G. L. c. 127, § 86F, and those who fail to return from furlough, are unconstitutional. In the alternative, he claims that there is no rational distinction between a work release escape, which carries a maximum sentence of one year, and a furlough escape, which carries a maximum sentence of ten years. There was no error.

Although it appears that the defendant had been participating in a work release program prior to Thanksgiving Day, 1993, he was clearly on furlough pursuant to G. L. c. 127, § 90A, at the time of his escape. Such "escapes" fall within the general escape statute, G. L. c. 268, § 16.[7] *Commonwealth* v. *Hughes*, 364 Mass. 426, 428-430 (1973). We previously applied the rational relationship test to a defendant's equal protection claim based on the disparate statutory sentencing provisions of G. L. c. 268, § 16, and G. L. c. 127, § 90A, the statutes being considered here, and determined that the claim was without merit. See *Commonwealth* v. *Clark*, 20 Mass. App. Ct. 962, 964 (1985). Contrast *Commonwealth* v. *Arment*, 412 Mass. 55, 63 (1992) (applying rational relationship test to strike down statute subjecting different classes of prisoners to different treatment depending on date of their offense for purposes of commitment as sexually dangerous persons). One need only look at the different terms and conditions of the two statutes to determine that inmates released on furlough for as long as seven days at a time in order to visit relatives, "secure a suitable residence for use upon release[, or] for any other reason consistent with . . . reintegration . . . into the community," G. L. c. 127, § 90A, are differently situated than those permitted to leave the facility for the limited purpose of seeking or engaging in "gainful employment," or obtaining educational training, G. L. c. 127,

---

[7]General Laws c. 268, § 16, provides, in relevant part:

"A prisoner of any penal institution . . . who . . . fails to return from any temporary release from said institution under the provisions of [G. L. c. 127, § 90A] . . . may be pursued and recaptured and shall be punished by imprisonment in the state prison for not more than ten years or by imprisonment in a jail or house of correction for not more than two and one-half years."

§ 86F. Because a furlough privilege is more expansive than a work release privilege, the imposition of a greater penalty for violation of the former satisfies the rational relationship test. Indeed, our Supreme Judicial Court has recognized the distinction between an escape while on furlough and an escape while on work release pursuant to G. L. c. 127, § 49, a statutory provision similar to § 90A, which authorizes the "release of committed offenders for participation in certain education, training or employment programs" that have been established by the Commonwealth. See *Commonwealth* v. *Hughes*, *supra* at 430-431.

Further militating against the defendant's equal protection argument is the fact that, although he, as a furlough escapee, was punished more severely than he would have been if he had failed to return from his work release program, that result "does not necessarily follow and in fact the opposite may be true." *Id.* at 431. Under G. L. c. 268, § 16, the general escape statute, failure to return from furlough "is punishable . . . 'by imprisonment in the state prison for not more than ten years or by imprisonment in a . . . house of correction for not more than two and one half years.' " *Id.* Failure to return from a work release program authorized under G. L. c. 127, § 86F, is punishable by "a term not to exceed one year or the term for which he was originally sentenced, whichever is the lesser." Had the defendant not received the maximum sentence allowed under the escape statute as a result of his conviction as a habitual criminal, he could have received a lighter sentence than that which would have been imposed for failure to return from work release. See, e.g., *Hughes*, *supra* at 431 (furlough escapee received lesser sentence than work release escapee might have received).

3. *Denial of the motion for a required finding of not guilty.* The defendant next argues that the judge's denial of his motion for a required finding of not guilty on the habitual criminal charge was error, in light of the fact that one of the convictions relied upon by the Commonwealth was on appeal at the time of trial. The defendant maintains that, according to the vast weight of authority in other jurisdictions, a conviction from which an appeal has been taken cannot, pending the outcome of that appeal, be considered as a conviction within the meaning of a habitual criminal statute such as the one at issue here.

"Decisions from other jurisdictions considering the effect of

appeal on the use of prior convictions for enhanced sentences are not uniform. Some require completion of the appellate process[, while] others permit a conviction on appeal to be considered as a prior conviction for enhancement purposes." *Whack* v. *State*, 338 Md. 665, 678 (1995), and cases there collected. The appeal on which the defendant relies in this case, however, was taken not directly from his conviction, but from the denial of his motion to withdraw his guilty pleas, filed some three years later.[8] Assuming, without deciding, that the pendency of a direct appeal precludes a conviction from being used as a prior conviction under G. L. c. 279, § 25, it would not necessarily follow that an appeal from the denial of a defendant's motion for postconviction relief would also render the conviction exempt. See *State* v. *Olson*, 200 Iowa 660, 668 (1925) ("[c]ases where a motion for a new trial or an appeal [from the denial of such a motion] is pending do not present the same question" as those in which a direct appeal has been taken).

In contrast to Mass.R.A.P. 4(b), as amended, 378 Mass. 929 (1979), which requires a notice of direct appeal to be filed "within thirty days after the verdict[,] finding of guilt or . . . imposition of sentence," Mass.R.Crim.P. 30(b), 378 Mass. 900 (1979), authorizes the trial court to "grant a new trial *at any time* if it appears that justice may not have been done." (Emphasis added.) Thus, under the interpretation urged by the defendant, an appeal from the denial of a motion for post-conviction relief, filed at a much later date, could indefinitely exempt a conviction from being used as a prior conviction under G. L. c. 279, § 25. Such a rule would result in the "rare

---

[8]The defendant's motion was characterized as one "to withdraw guilty pleas." For purposes of this appeal, we treat the motion as one for a new trial. See *Commonwealth* v. *Penrose*, 363 Mass. 677, 680-681 (1973) (validity of guilty plea is properly challenged in motion for a new trial). We briefly summarize the facts underlying the defendant's motion. Represented by counsel, the defendant pleaded guilty in Superior Court, on September 20, 1989, to one count of breaking and entering in the nighttime with intent to commit a felony and one count of larceny in a building. See *Commonwealth* v. *Parzyck*, 41 Mass. App. Ct. 195, 195 (1996). The defendant's pleas were the result of a plea bargain made with the prosecutor. *Ibid.* On September 1, 1992, the defendant filed a motion seeking to withdraw his guilty pleas, alleging that the Commonwealth had violated the terms of the plea agreement. *Id.* at 197. On appeal, the defendant argued that the prosecutor had failed to recommend that the sentence imposed in a subsequently tried District Court case be concurrent with those imposed in Superior Court. Nevertheless, the underlying conviction was upheld by this court. *Id.* at 199.

application of the habitual [criminal] statute[]," *Glick* v. *State*, 286 Ark. 133, 137 (1985), and would surely frustrate "the obvious purpose of the statute, which is to punish repeat offenders." *People* v. *District Court in and for the Tenth Judicial Dist.*, 192 Colo. 375, 376 (1977). See *Gargliano* v. *State*, 334 Md. 428, 444 (1994) (general purpose of enhanced penalty statutes is to "identify[] defendants who have not reformed their behavior after prior convictions and incarcerat[e them] for a longer period than would otherwise be applicable"). We therefore hold that when a defendant has appealed from the denial of a motion for postconviction relief, the pendency of the appeal does not preclude the use of the conviction for purposes of G. L. c. 279, § 25.

4. *Jury instructions.* The defendant next challenges that portion of the judge's charge that concerns the mental state required to support a conviction for the crime of escape. He contends that the instruction was erroneous because it permitted the jury to convict in the absence of evidence that he had the specific intent to remain away from the Hampshire County house of correction after his furlough had expired. Because the defendant did not object to the instruction at trial, our review is limited to whether any error created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967).

"[W]rongful intent is a necessary element of the crime of escape, [and may be] inferred from . . . the unauthorized extension of the period of [a] furlough — in the absence of a satisfactory explanation." (Internal citations omitted.) *Commonwealth* v. *Meranda*, 2 Mass. App. Ct. 890, 891 (1974). The charge as a whole adequately conveyed this concept to the jury. See *Commonwealth* v. *Conefrey*, 37 Mass. App. Ct. 290, 292 (1994) (challenged instruction must be evaluated in context of entire charge). The judge stated that the Commonwealth had the burden of proving beyond a reasonable doubt that the defendant was a prisoner at a jail or correctional institution, that he failed to return from a release, and that he did so "willingly and freely without being forced to by any outside force." He further instructed the jury that in determining whether the defendant had the required criminal intent, they could consider the absence of any "valid or legitimate explanation or reason not to come back" from furlough. Finally, the judge stated that "while wrongful intent is a necessary element of the crime of escape, [such] intent . . . may be inferred from the unlawful departure

or unauthorized extension of a period of the furlough in the absence of some satisfactory explanation." There was no error. See *Commonwealth* v. *Meranda, supra.*

The defendant also maintains that he was entitled to an intoxication instruction, and that the judge's refusal to give such an instruction warrants reversal. His claim is without merit. "It is well-established in this Commonwealth that, where there is no [requirement] of specific intent, a defendant is not entitled to an instruction on the effect intoxication may have had on [his] ability to form intent." *Commonwealth* v. *Troy,* 405 Mass. 253, 260 (1989), citing *Commonwealth* v. *Henson,* 394 Mass. 584, 592 (1985). In any event, the judge instructed the jury that they could consider the defendant's alleged intoxication in determining whether he "willingly and freely failed to return" from furlough. Nothing more was required.

*Judgments affirmed.*