NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1020

COMMONWEALTH

vs.

SHANNON POLACKE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the Superior Court, the defendant was convicted of two counts of rape of a child with force and two counts of aggravated rape of a child.  This case presents a classic credibility contest between the victim and the defendant.  The victim was the defendant's daughter, who was a young teenager at the time the offenses were committed.  The defendant, who testified in her own defense, denied all the allegations, contending that the victim was not credible.

On appeal, the defendant contends that the judge erred in admitting prior bad act evidence.[1]  Mindful that we are reviewing

_____

[1] She also claims that her trial counsel's performance was deficient in several respects.  As a result of our disposition,

most of this evidence to determine whether any error created a substantial risk of a miscarriage of justice,[2] we conclude that this case presents the rare circumstance in which prior bad act evidence may have overwhelmed the proceedings; the record lacks careful and reasoned judicial scrutiny of each act, and the jury were not provided with contemporaneous limiting instructions. Accordingly, we are constrained to vacate the convictions.

Background. 1. Facts. We summarize the facts the jury could have found reserving certain details for our discussion of the issues. The victim and her twin brother grew up in a "tumultuous" household after their parents separated when they were about two years old. When the victim was in either the sixth or seventh grade, she spoke with the defendant about her sexual orientation. The defendant dismissed the victim's thoughts that she might be a lesbian, contending that the victim was "just confused" and "might not be ready for a man yet." The defendant told the victim that "she was going to try and help [her]," brought her into the bathroom, "had [the victim] remove

_____

we need not reach the defendant's ineffective assistance of counsel claims.

[2] We note there was an objection to the admission of three acts, and therefore we review those for prejudicial error. See Commonwealth v. Crayton, 470 Mass. 228, 252 (2014). Our conclusion is the same as to these acts, and we would reach the same result regardless of the standard of review applied.

2

[her] pants and underwear," and inserted a tampon with the plastic applicator into the victim's vagina "repeatedly." She "didn't stop even when [the victim] was crying out, telling her to stop and to not do that." The victim "was in a lot of pain" and felt "agony between [her] legs." The defendant told the victim that "[she] was tight" and only stopped assaulting her once the victim "started bleeding down there."

At the end of their freshman year of high school, the victim's brother moved out of the defendant's home because of his contentious relationship with the defendant. The victim continued to live with the defendant throughout that summer. The defendant explained to the victim's friends that the brother moved out because "[he] was the abusive one and . . . she was afraid of him." The victim disputed this account and told her friends that it was not true. When the defendant learned what the victim said from the friends' parents, she became "really upset at [the victim]" and confronted her about it. She told the victim "that [her brother] was going to abuse [her] and try and rape [her]." When they arrived home, the defendant brought the victim to the bathroom, had her remove her pants and underwear, and "put her fingers in [the victim's] vagina." The victim testified that this assault prompted her to leave the defendant's home and move in with her father, stepmother, and

3

brother at the beginning of her sophomore year of high school. The victim described her relationship with her stepmother as "[v]ery loving and maternal." In fact, she considers her stepmother "[her] mother," and not the defendant.

On cross-examination, the victim, in response to a question posed by trial counsel, stated that she told her stepmother that the defendant had raped her. Approximately four years later, in 2021, the victim reported these incidents to the police. The defendant testified and denied all the allegations. The Commonwealth also called Dr. Stephanie Block as an expert witness in the areas of children's "disclosures of abuse" and their "memory for trauma."

2. The motion in limine and the bad act evidence at trial. Prior to trial, the Commonwealth filed a motion in limine (motion) to admit eight[3] instances of the defendant's prior and contemporaneous bad acts: (1) telling the victim that her biological father never wanted a daughter or his children and never cared for them; (2) not paying for essential utilities and leaving her children unsupervised for hours at a time; (3) dragging the victim's brother down the stairs while he was inside of a sleeping bag and shaking him (sleeping bag incident)

_____

[3] For ease, we shall refer, as do the parties, to the multiple acts of violence by the defendant described in paragraph three of the motion as one act.

4

and throwing items at the wall and her children; (4) watching the victim shower, turning the water to cold, and commenting on her body; (5) inappropriately remarking about the victim's body with comments such as the victim being "really tight"; (6) commenting while intoxicated about feeling like a "pedo" when speaking to the victim's friends and "lovers" (videorecorded by the victim and shown to the jury); (7) refusing to bring the victim to therapy because she did not want the victim to "talk shit" about her; and (8) forcing the victim's brother out of the car and leaving him on the side of the road while upset with him (car incident).

"Before prior bad act evidence can be admitted against a defendant, the Commonwealth must satisfy the judge that 'the jury [could] reasonably conclude that the act[s] occurred and that the defendant was the actor'" (citation omitted). Commonwealth v. Leonard, 428 Mass. 782, 785 (1999). In its motion, the Commonwealth argued that the acts were "highly relevant to show the defendant's course of conduct, the nature of the relationship between the defendant and the alleged victim, her biological daughter, and the alleged victim's state of mind." In response, at the motion hearing, trial counsel told the judge that "[he] generally ha[d] an objection to the admission of prior bad acts in the instance of uncharged conduct

that rises to criminal behavior."  At trial, he specifically objected to the defendant's telling the victim that her biological father did not want a daughter or care about her or her brother, the sleeping bag incident, and the car incident.

After a hearing, the judge allowed the motion in part.  He admitted evidence of the sleeping bag incident on the condition that the victim testified that "[she] saw it and that there was something about [it] that made her afraid and [that she] continued to be afraid as she was growing up."  The judge cautioned, however, that he "[was] not sure that [he] would let the victim get into more of the specifics" because he "[did not] think it would be fair to the defendant and it would be prejudicial to her if there [were] two witnesses talking about all the facts and circumstances of [that] incident."  The judge reasoned that the acts were relevant to "show the background of the family dynamics, which would be important in why the . . . victim disclosed or didn't disclose and when she disclosed."

At trial, the victim testified to all eight acts, although with a slight variation to acts four and five.  The victim's brother testified to acts two, three, and eight.  Three additional acts, that were not the subject of the Commonwealth's motion, were elicited at trial without objection.  The victim's brother testified that the defendant (1) said that the victim

was "an ugly baby"; (2) put makeup on the victim that "made her look like a clown," embarrassing the victim and prompting much ridicule at a school dance; and (3) commented on the victim's genitals and those of the victim's brother's girlfriend, referring to them as "ham" and "roast beef," respectively.

Discussion. The defendant contends that the judge erred in admitting "unduly prejudicial prior bad act evidence," that created a substantial risk of a miscarriage of justice. "A substantial risk of a miscarriage of justice exists when we have 'a serious doubt whether the result of the trial might have been different had the error not been made.'" Commonwealth v. Randolph, 438 Mass. 290, 297 (2002), quoting Commonwealth v. Azar, 435 Mass. 675, 687 (2002). In analyzing a claim under this standard, we review the evidence and the case as a whole and ask four questions:

> "(1) Was there error? (2) Was the defendant prejudiced by the error? (3) Considering the error in the context of the entire trial, would it be reasonable to conclude that the error materially influenced the verdict? (4) May we infer from the record that counsel's failure to object or raise a claim of error at an earlier date was not a reasonable tactical decision?" (citations omitted).

Randolph, supra at 297-298.

It is well settled that evidence of a defendant's bad character and uncharged bad acts is not admissible to show a defendant's propensity to commit the charged crime but may be

admissible if relevant for other purposes such as "common scheme, pattern of operation, absence of accident or mistake, identity, intent or motive." Commonwealth v. Dwyer, 448 Mass. 122, 128 (2006), quoting Commonwealth v. Marshall, 434 Mass. 358, 366 (2001). See Mass. G. Evid. § 404(b) (2025). "In sexual assault cases, some evidence of [bad character and] uncharged conduct may be admissible to give the jury a view of the entire relationship between the defendant and the alleged victim . . . ." Dwyer, supra at 128-129. "However, such evidence should not be admitted if its probative value is outweighed by the risk of unfair prejudice to the defendant." Commonwealth v. Nascimento-Depina, 496 Mass. 1, 9, cert. denied, 146 S. Ct. 260 (2025). "Whether evidence is relevant in any particular instance, and whether the probative value of relevant evidence is outweighed by its prejudicial effect, are questions within the sound discretion of the judge." Commonwealth v. Smiley, 431 Mass. 477, 484 (2000), quoting Commonwealth v. Valentin, 420 Mass. 263, 270 (1995), S.C., 470 Mass. 186 (2014). We will not disturb the exercise of that discretion in the absence of "palpable error" (citation omitted). Commonwealth v. McCowen, 458 Mass. 461, 478 (2010). Without question, "the prosecution may not introduce evidence of a defendant's prior or subsequent bad acts for the purpose of demonstrating bad

8

character or propensity to commit the crime[s] charged" (citation omitted). Commonwealth v. Butler, 445 Mass. 568, 574 (2005). It is also true that the Commonwealth "[i]s entitled to present as full a picture as possible of the events surrounding the incident itself." Commonwealth v. Bradshaw, 385 Mass. 244, 269-270 (1982).

Here, the defendant was charged with raping her daughter. The Commonwealth alleged that the motive was not sexual gratification, but rather to attempt to control, manipulate, degrade, and punish the victim, something the defendant vehemently denied. The jury were presented with a classic credibility contest. Although the nature of the crime was woven into the fraught family dynamics, the prior bad acts "consist[ed] almost entirely of acts showing the defendant's poor treatment of [the victim]." Commonwealth v. Morris, 82 Mass. App. Ct. 427, 441 (2012). To be admissible, there must be a "logical relationship" between the prior bad act and the crime charged (citation omitted). Commonwealth v. Facella, 478 Mass. 393, 405 (2017). In many instances these acts were untethered to the crimes charged. Examples of this include the defendant (1) commenting on the victim's and her brother's girlfriend's genitals, referring to them as "ham" and "roast beef"; (2) not paying for essential utilities; and (3) commenting while

9

intoxicated about feeling like a "pedo" when speaking to the victim's friends and "lovers" (captured on videotape and played at trial).

Where, as here, the defense centered on attacking the victim's credibility, the evidence of the nature of the relationship between the defendant and the victim arguably provided context for the rapes that would otherwise seem inexplicable. See Bradshaw, 385 Mass. at 269-270. However, even if permissible for this reason, the question is whether its probative value was outweighed by the risk of unfair prejudice to the defendant. See Commonwealth v. Crayton, 470 Mass. 228, 249 (2014). "It is implicit in the general rule regarding the inadmissibility of prior bad acts evidence that the admission of such evidence carries with it a high risk of prejudice to the defendant." Commonwealth v. Anestal, 463 Mass. 655, 672 (2012), quoting Commonwealth v. Barrett, 418 Mass. 788, 795 (1994). The potential prejudice is of several types:

> "Such evidence compels the defendant to meet charges of which the indictment gives [her] no information, confuses [her] in [her] defen[s]e, raises a variety of issues, and thus diverts the attention of the jury from the crime immediately before it; and, by showing the defendant to have been a knave on other occasions, creates a prejudice which may cause injustice to be done [her]."

Anestal, supra at 665, quoting Commonwealth v. Jackson, 132 Mass. 16, 20-21 (1882).

10

Here, the judge did not expressly weigh the probative value of the prior bad act evidence against the risk of unfair prejudice to the defendant. See Commonwealth v. Samia, 492 Mass. 135, 148 (2023). And we cannot say that he did so implicitly by the admission of the evidence, see id., where the judge indicated that he would defer certain rulings until he heard some initial testimony, but failed to revisit the admissibility of the bad act evidence. This causes us concern because, "even if relevant, a judge must guard against the risk that evidence of prior bad acts will divert the jury's attention from the charged acts." Dwyer, 448 Mass. at 129. Here, the sheer amount of prior bad act evidence introduced by the Commonwealth was substantial in comparison to the evidence presented of the crimes charged. Indeed, it risked overwhelming the case with bad act evidence and distracting the jury from determining whether the Commonwealth proved its case beyond a reasonable doubt. And although it was incumbent on the defendant to object, our cases suggest that even without an objection, there are occasions when "[t]he judge should . . . intervene[] to prevent" these dangers. Id. This case presents that occasion and the judge did not do so. See Commonwealth v. Roche, 44 Mass. App. Ct. 372, 380-381 (1998) (to guard against unfair prejudice, judge should limit quantity of bad act

evidence admitted).  Moreover, in a case turning almost entirely on credibility, the prior bad act evidence may have improperly bolstered the victim's credibility.  See Commonwealth v. Scullin, 44 Mass. App. Ct. 9, 13 (1997) (in credibility contest "repeated references" to other acts likely made "significant impression" on jury).  See also Commonwealth v. Clark, 23 Mass. App. Ct. 375, 381-382 (1987) (substantial risk of miscarriage of justice created where erroneously admitted evidence could have enhanced victim's credibility, which was "decisive issue" in case).

Finally, the admission of bad act evidence may create a "need [for the judge] to instruct the jury with particular care what to do in order to avoid diversionary misuse of the material."  Commonwealth v. Mills, 47 Mass. App. Ct. 500, 505-506 (1999).  Indeed, adequate contemporaneous and final limiting instructions may tip the balance in favor of admissibility.  See Commonwealth v. Gomes, 475 Mass. 775, 785 (2016).  The judge did not mitigate any potential prejudice by the admission of this evidence by providing clear, forceful contemporaneous limiting instructions, only providing them in his final charge to the jury, as part of his entire final instructions.[4]  Even

---

[4] Trial counsel did not request a limiting instruction, and failed to follow up on the judge's invitations to possibly provide one on request.

contemporaneous limiting instructions have sometimes been held insufficient to prevent undue prejudice, see, e.g., Dwyer, 448 Mass. at 128-129 & n.8.  Here, there were none.

Accordingly, we are constrained to conclude that the judge's admission of extensive prior bad act evidence, without a careful balancing of its probative value against the risk of unfair prejudice, and without any contemporaneous limiting instructions, despite the lack of objection, was an abuse of discretion and created a substantial risk of a miscarriage of justice.  See Crayton, 470 Mass. at 252.  See also L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

Judgments vacated.

Verdicts set aside.

By the Court (Blake, C.J.,
  Vuono & Neyman, JJ.[5]),

Clerk

Entered:  April 21, 2026.

---

[5] The panelists are listed in order of seniority.